**Baker & Hostetler LLP**

45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Regina L. Griffin
Mark A. Kornfeld
Jorian L. Rose
Elizabeth A. Scully

*Attorneys for Irving H. Picard., Trustee for the*
*Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br>              Plaintiff-Applicant, <br>    v. <br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br>            Defendant. | Adv. Pro. No. 08-01789 (BRL) <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re: <br> BERNARD L. MADOFF, <br>           Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, <br><br>          Plaintiff, <br><br>    v. <br><br> THYBO ASSET MANAGEMENT LIMITED; and THYBO STABLE FUND LTD. <br><br>          Defendants. | Adv. Pro. No. 09-1365 (BRL) |

**<u>TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'</u>**
**<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

TRUSTEE'S ALLEGATIONS.................................................................................. 3

I.      THE BLMIS PONZI SCHEME................................................................ 3

II.     DEFENDANTS ARE EXPERIENCED HEDGE FUND OPERATORS AND
        INVESTORS WHO TOUTED THEIR DILIGENCE ABILITIES.................................. 3

III.    DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT BLMIS WAS A
        FRAUD ...................................................................................... 4

ARGUMENT ............................................................................................... 6

I.      APPLICABLE LEGAL STANDARDS ..................................................... 6

        A.      On A Motion To Dismiss, A Court Must Accept The Facts Alleged As
                True And Weigh All Reasonable Inferences In The Plaintiff's Favor ................. 6

        B.      Disputed Issues of Fact Surrounding The Defendants' "Good Faith"
                Arguments Are Not Appropriately Resolved At The Motion To Dismiss
                Stage........................................................................................ 7

II.     THE TRUSTEE HAS SUFFICIENTLY PLED CLAIMS FOR ACTUALLY
        FRAUDULENT TRANSFERS UNDER THE BANKRUPTCY CODE AND
        NYDCL...................................................................................... 9

        A.      The Trustee Has Adequately Alleged Fraudulent Intent By Virtue Of The
                Ponzi Scheme Presumption................................................................. 10

        B.      The Trustee Need Not Plead Transferee Intent Under The NYDCL.................. 11

        C.      Defendants' Fact-Based Arguments Regarding Transferee Intent Are
                Irrelevant And Without Merit ............................................................. 13

                1.      Defendants' Reliance On Federal Securities Law Decisions Is
                        Misplaced ...................................................................... 14

                2.      Defendants' Alleged Pattern Of Investments With BLMIS Is Not
                        Dispositive Of Intent......................................................... 15

        D.      Defendants' Misconstrue The *Irving Trust* And *Sharp* Decisions...................... 16

III.    THE TRUSTEE HAS SUFFICIENTLY PLED CLAIMS FOR
        CONSTRUCTIVELY FRAUDULENT TRANSFERS UNDER FEDERAL AND
        STATE LAW ................................................................................ 19

        A.      The Trustee Has Alleged That The Defendants Did Not Provide
                Reasonably Equivalent Value Under The Bankruptcy Code.............................. 19

                1.      Defendants Were Not Innocent Investors ................................ 20

                2.      Defendants' Innocence And Exchange Of Value Are Disputed
                        Issues Of Fact.................................................................. 22

i

# TABLE OF CONTENTS
(continued)

**Page**

B.   The Trustee Has Alleged That Defendants Did Not Provide Fair Consideration Under The NYDCL ...................................................... 23

C.   The Defendants Seek To Apply An Incorrect Standard To The Trustee's Constructive Fraud Claims Under the NYDCL ..................................................... 24

IV.   THE SAFE HARBOR OF SECTION 546(E) IS INAPPLICABLE TO THE TRANSFERS MADE TO DEFENDANTS IN FURTHERANCE OF THE PONZI SCHEME ........................................................................... 27

A.   Section 546(e) Does Not Apply To Fictional Transactions ................................. 27

B.   The Transfers Were Not Made For The Purposes Of "Completing" A Securities Transaction And Are Thus Not Settlement Payments Under Section 546(e) ......................................................... 31

C.   The Transfers At Issue Were Also Not Made In Connection With A "Securities Contract" Under Section 546(e) ....................................... 32

V.   TSF'S SIPA CLAIMS SHOULD BE TEMPORARILY DISALLOWED UNDER SECTION 502(D) ..................................................................... 32

VI.   TAM'S CHALLENGE TO PERSONAL JURISDICTION IS FRIVOLOUS ............... 33

A.   Legal Standard ................................................................... 33

B.   The Applicable Personal Jurisdictional Analysis ............................... 34

C.   Trustee's Jurisdictional Allegations Establish TAM's Sufficient Minimum Contacts In The United States ....................................................... 35

CONCLUSION ...................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agency Rent A Car Sys., Inc. v. Grand Rent a Car Corp.,*
98 F.3d 25 (2d Cir. 1996)......................................................................................35

*Alfa v. Enron Creditors Recovery Corp.* (*In re Enron Creditors Recovery Corp.*), 422
B.R. 423, 439 (S.D.N.Y. 2009), *aff'd,* __ F.3d __ 2011 WL 2536101 (2d Cir. 2011)............29

*Armstrong v. Collins,*
2010 U.S. Dist. LEXIS 28075 (S.D.N.Y. Mar. 24, 2010) ................................19, 22

*Armstrong v. Collins*,
No. 01-02437, 2011 WL 308260 (S.D.N.Y. Jan. 31, 2011) ....................................18

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)............................................................................................6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
305 F.3d 120 (2d Cir. N.Y. 2002).....................................................................34, 35

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.* (*In re Bayou Group,
LLC*)
(*"Bayou III"*), 396 B.R. 810 (Bankr. S.D.N.Y. 2008), *rev'd on other grounds,* 439
B.R. 284 (S.D.N.Y. 2010)......................................................................................19

*Bayou Superfund, LLC v. WAM Long/Short Fund II, LLP (In re Bayou Group, LLC)
("Bayou I"),*
362 B.R. 624 (Bankr. S.D.N.Y. 2007) ...................................................................10

*Boykin v. KeyCorp.,*
521 F.3d 202 (2d Cir. 2008)...................................................................................7

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)..............................................................................................37

*Conley v. Gibson,*
355 U.S. 41 (1957).................................................................................................6

*Contemporary Indus. Corp. v. Frost,*
564 F.3d 981 (8th Cir. 2009) .................................................................................31

*Credit Lyonais Secs. (USA), Inc. v. Alcantara,*
183 F.3d 151 (2d Cir. 1999)..................................................................................35

*Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.),*
275 B.R. 641 (Bankr. M.D. Fl. 2002) ...................................................................22

*Degirolomo v. Track World, Inc. (In re Laurel Valley Oil Co.),*
No. 07-6109, 2009 WL 1758741 (Bankr. N.D. Ohio June 16, 2009)......................30

*DiCello v. Jenkins (In re Int'l Loan Network, Inc.),*
160 B.R. 1 (Bankr. D.C. 1993) .............................................................................23

*Donell v. Kowell,*
533 F.3d 762 (9th Cir. 2008) ................................................................................20

*Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.),*
2008 WL 281972 (S.D.N.Y. Jan. 25, 2008) ..........................................................31

*Enron Creditors Recovery Corp.  v. Alfa,*
__F.3d __, 2011 WL 2536101 (2d Cir. 2011) .......................................................31

*Geltzer v. Mooney (In re MacMenamin's Grill Ltd.),*
No. 09–8266 (RDD), 2011 WL 1549056 (Bankr. S.D.N.Y. Apr. 21, 2011) (Drain, J.) .........29

*Gonzalez v. Wells Fargo Bank, N.A ( In re Gonzalez),*
342 B.R. 165 (Bankr. S.D.N.Y. 2006)...................................................................22

*Gowan v. Novator Credit Management, et al. (In re Dreier LLP) ("Novator Credit
Management"),*
Adv. No. 10-04278, 2011 WL 2412608 (Bankr. S.D.N.Y. June 16, 2011) (Glenn, J.) ....11, 13

*Gowan v. The Patriot Group, LLC, et al. (In re Dreier LLP),*
Adv. No. 10-03524, 2011 WL 2412581 (Bankr. S.D.N.Y. June 16, 2011)(Glenn, J.) ... *passim*

*Gredd v. Bear Stearns Secs. Corp.* (In re Manhattan Inv. Fund, Ltd.),
359 B.R. 510 (Bankr. S.D.N.Y. 2007) (Lifland, J.) ("*Manhattan Inv. I*"), *aff'd in part,
rev'd in part on other grounds*, 397 B.R. 1 ("*Manhattan Inv. II*") (S.D.N.Y. 2007) ..............10

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Grp., Inc.),*
916 F.2d 528 (9th Cir. 1990) ................................................................................16

*HBE Leasing Corp. v. Frank ("HBE Leasing Corp. I"),*
48 F.3d 623 (2d Cir. 1995)............................................................................ *passim*

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984)............................................................................................35

*Hill v. Spencer Savings & Loan Association (In the Matter of Bevill),*
83 B.R. 880 (D.N.J. 1988) ...................................................................................30

*In re Adamo*,
    619 F.2d 216 (2d Cir. 1980)....................................................................................30

*In re Bayou Group ("Bayou IV")*,
    439 B.R. 284 (S.D.N.Y. 2010).............................................................8, 10, 11, 18

*In re Bayou Group, LLC ("Bayou II")*,
    372 B.R. 661 (Bankr. S.D.N.Y. 2007)....................................................................18

*In re Beacon Assocs. Litig.*,
    745 F. Supp.2d 386 (S.D.N.Y. 2010).....................................................................14

*In re Bernard L. Madoff Inv. Secs., LLC,*
    424 B.R. 122 (Bankr. S.D.N.Y. 2010)....................................................................32

*In re Bernard L. Madoff Inv. Secs. LLC,*
    __ F.3d __ 2011, WL 3568936 (2d Cir. 2011) ............................................ *passim*

*In re Deak & Co., Inc.*,
    63 B.R. 422 (Bankr. S.D.N.Y. 1986)......................................................................36

*In re First Commercial Mgmt. Grp.*,
    279 B.R. 230 (Bankr. N.D. Ill. 2002) ....................................................................23

*In re Gosman*,
    2005 Bankr. LEXIS 3183 (Bankr. S.D. Fla. Mar. 1, 2005) ...................................22

*In re Grumman Olson Indus., Inc.*,
    329 B.R. 411 (Bankr. S.D.N.Y. 2005)......................................................................6

*In re Indep. Clearing House Co.*,
    77 B.R. 843 (D.Utah 1987)....................................................................................23

*In re Independent Clearing House Co.*,
    41 B.R. 985 (Bankr. D. Utah 1984) ......................................................................28

*In re J.P. Jeanneret Assocs., Inc.*,
    2011 WL 335594 (S.D.N.Y. Jan. 31, 2011) ..........................................................14

*In re Manhattan Inv. II,*
    397 B.R. 1 (S.D.N.Y. 2007).....................................................................11, 18, 22

*In re Sharp Int.'l Corp. v. State Bank & Trust Co. (In re Sharp Int.'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)................................................................................ *passim*

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010)....................................................................14

*In re Western World Funding, Inc.*,
  54 B.R. 470 (Bankr. D. Nev. 1985) ..................................................28

*Irving Trust Co. v. Chase Nat. Bank*,
  65 F.2d 409 (2d Cir. 1933)....................................................16, 17, 18, 19

*Johnson v. Neilson (In re Slatkin)*,
  525 F.3d 805 (9th Cir. 2008) ..................................................28

*Kaiser Steel Corp. v. Charles Schwab & Co.*,
  913 F.2d 846 (10th Cir. 1990) ..................................................31

*Kipperman v. Circle Trust F.B.O. (In re Grafton Partners)*,
  321 B.R. 527 (9th Cir. BAP 2005)..................................................28

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
  394 B.R. 646 (Bankr. E.D.N.Y. 2008)..................................................23, 24

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)..................................................34

*Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*,
  247 B.R. 51 (Bankr. S.D.N.Y. 1999)..................................................24, 28

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137 (S.D.N.Y. 2010), *aff'd in part*, __ F. 3d__, 2011 WL 2640579
  (2d Cir. July 7, 2011) ..................................................14

*Newman v. Family Mgmt. Corp.*,
  748 F. Supp. 2d 299 ..................................................14

*Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*,
  222 B.R. 417 (Bankr. S.D.N.Y. 1998)..................................................25

*Official Comm. Of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit
  Partners L.P. (In re Fedders N. Am., Inc.)*,
  405 B.R. 527 (Bankr. D. Del. 2009) ..................................................22

*Penguin Group (USA) Inc. v. Am Buddha*,
  609 F.3d 30 (2d Cir. 2010)..................................................34

*Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer
  Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*,
  444 F.3d 203 (3d Cir. 2006)..................................................23

*Picard v. Chais (In re Bernard L. Madoff Investment Securities, LLC)*,
  445 B.R. 206 (Bankr. S.D.N.Y. Feb. 24, 2011)..................................................7, 10, 34, 37

*Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    418 B.R. 75 (Bankr. S.D.N.Y. 2009) ................................................................34, 36

*Picard v. Cohmad Secs. Corporation (In re Bernard L. Madoff Inv. Secs., LLC)*,
    Adv. No. 09-1305 (BRL), __ B.R. __, 2011 WL 3274077 (Bankr. S.D.N.Y. August 1,
    2011) .......................................................................................................... *passim*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*,
    440 B.R. 284 (Bankr. S.D.N.Y. 2010) ......................................................... *passim*

*Rothschild v. Thompson*,
    78 A.D.2d 795 (1st Dep't 1980) ........................................................................35

*Schulman v. Delaire*,
    No. 10 Civ. 3639 (HB), 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) ....................14

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999), *aff'd*, 818 F.2d 240 (2d Cir. 1987) ......................7, 12

*SEC v. Cohmad Sec. Corp.*,
    No. 09 Civ 5689 (LLS), 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) (Stanton, J.) .................14

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ..................................................................7

*Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) .............................................................................35

*South Cherry Street, LLC v. Hennessee Group, LLC*,
    573 F. 3d 98 (2d Cir. 2009) ......................................................................14, 15

*Stephenson v. Citco Grp. Ltd.*,
    700 F. Supp. 2d 599 (S.D.N.Y. 2010) ...............................................................14

*United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) .................................................................9

*United States v. McCombs*,
    30 F.3d 310 (2d Cir. 1994) ..............................................................................18

*United States v. Orozco-Prada*,
    636 F. Supp. 1537 (S.D.N.Y. 1986) ..................................................................13

*Wider v. Wootton*,
    907 F.2d 570 (5th Cir. 1990) ...........................................................................28

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*,
    944 F.2d 589 (9th Cir. 1991) ......................................................................20, 23

## FEDERAL STATUTES

11 U.S.C. § 502(d) ...................................................................................................32, 33

11 U.S.C. § 544 ................................................................................................................9

11 U.S.C. § 546(e) ...................................................................................................*passim*

11 U.S.C. § 548(a)(1)(A) ..........................................................................9, 10, 17, 27

11 U.S.C. § 548(a)(1)(B) ..............................................................................................19

11 U.S.C. § 548(a)(2) .............................................................................................20, 23

11 U.S.C. § 548(c) ...........................................................................................8, 12, 17

11 U.S.C. § 550(a) ...........................................................................................................9

11 U.S.C. § 551 ................................................................................................................9

11 U.S.C. § 741(8) .........................................................................................................31

15 U.S.C § 78fff(b) ........................................................................................................30

Bankruptcy Act § 67e ...................................................................................................17

## STATE STATUTES

NYDCL § 272 .........................................................................................23, 24, 25

NYDCL § 273 ...............................................................................................23, 24

NYDCL § 274 ...............................................................................................23, 24

NYDCL § 275 ...............................................................................................23, 24

NYDCL § 276 ............................................................................................*passim*

NYDCL § 276-a ....................................................................................................12

NYDCL § 278 ..................................................................................9, 12, 14, 17

NYDCL § 278(1) ...................................................................................................12

NYDCL § 279 ..........................................................................................................9

## OTHER AUTHORITIES

Fed. R. Bankr. P. 7004(f) ...............................................................................34

Fed. R. Bankr. P. 7009 .................................................................................................7

Fed. R. Bankr. P. 7012 .................................................................................................6

Fed. R. Bankr. P. 7102(b) ..........................................................................................34

Fed. R. Civ. P. 8(a) .....................................................................................................25

Fed. R. Civ. P. 8(a)(2) ..................................................................................................6

Fed. R. Civ. P. 9(b) ...................................................................................................7, 9

Fed. R. Civ. P. 12(b)(2) ..............................................................................................34

Fed. R. Civ. P. 12(b)(6) ..........................................................................................6, 15

NY CPLR 302(a)(1) ....................................................................................................35

H.R. 12889, 74th Cong., 2d Sess. 193 (1936) (statement of Harry Zalkin) .................30

Report of Special Study of Securities Markets of the Secs. and Exch. Comm'n,
    H.R. Doc. No. 95 ...................................................................................................30

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"), under the Securities Investor Protection Act ("SIPA") 78aaa, *et seq*., by and through his undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Defendants Thybo Asset Management Limited ("TAM") and Thybo Stable Fund, Ltd.'s ("TSF"), (collectively, the "Defendants") Motion to Dismiss the Second Amended Complaint,[1] ("Motion" or "MTD"). For the reasons discussed below, the Defendants' Motion is without merit and should be denied.

## PRELIMINARY STATEMENT

The Defendants are sophisticated, professional fund-of-funds, which generated significant fees for, among other things, their alleged experience and due diligence in selecting, managing, and overseeing investments with BLMIS. Over the course of the Defendants' investment with BLMIS, the Defendants withdrew over $62 million from BLMIS. Based on the Trustee's investigation to date, the Defendants were at all relevant times, at a minimum, on inquiry notice of potential fraud, yet performed no reasonable, independent, and meaningful inquiry into the possibility of such fraud. The Defendants are therefore, required to return to the BLMIS estate the $62 million in fraudulent transfers they received.[2]

The Defendants seek dismissal of the Trustee's action against them in its entirety. At the core of the Defendants' Motion are fact-based, premature arguments that they were "innocent

---

[1] Citations to the Trustee's Second Amended Complaint ("Amended Complaint"), shall be ("SAC ¶ _").

[2] By Stipulation dated August 24, 2011, the Trustee agreed to dismiss without prejudice his claim against the Defendants seeking to recover tax withholdings that were made by BLMIS in connection with the Defendants' BLMIS accounts, as well as his equitable subordination claim, Count Nine of the Amended Complaint. As a result, the Defendants' arguments regarding these claims are now moot and need not be addressed by the Court. (MTD at 31-36).

investors" of BLMIS (*i.e.* "net losers").  Defendants blanketly argue that the Trustee is precluded

from pursuing any claims against them.  Defendants are wrong.

Each of the Defendants' specific legal arguments is either mistaken or premature, or both,

and necessarily fail, as a matter of law:

- Defendants contend that the Trustee is required to plead transferee intent in order
  to state a valid claim under the New York Debtor Creditor Law ("NYDCL") for
  actual fraud, and Count Four of the Trustee's Amended Complaint should be
  dismissed for an alleged failure to do so.  (MTD at 12-22).  Defendants' argument
  fails as a matter of law.  Both this Court's decision in *Cohmad* [3] and Judge
  Glenn's decision *In re Dreier LLP* [4] conclusively establish that transferor intent
  alone—not transferee intent—need be pled to establish a prima facie case of
  actual fraud claims under NYDCL;

- Defendants' fact-based arguments regarding transferee intent and their claimed
  "innocence," are irrelevant, premature, and without merit for the purposes of this
  Motion.  (MTD at 15-22).  Taking all of the Trustee's allegations as true, and
  drawing all reasonable inferences in his favor, Defendants bear the burden of
  establishing their "good faith" as an affirmative defense after the close of
  discovery.  Defendants' knowledge that Madoff's scheme could be fraudulent,
  and Defendants having turned a blind eye to red flags of fraud, is more than
  adequately pled;

- The Defendants assert that the transfers cannot be avoided under either the
  Bankruptcy Code or the NYDCL, because they were merely preferences, and thus
  the fraudulent intent element is not present.  (MTD at 23-28).  The Defendants'
  argument is legally flawed, and ignores this Court's previous rulings that the
  "Ponzi scheme presumption" is applicable for establishing the Trustee's burden of
  pleading fraudulent intent.  As this Court has often held, transfers made pursuant
  to a Ponzi scheme, by their very nature, are made with the intent to hinder, delay,
  and defraud creditors, and may be avoided by the Trustee;

- With respect to the Trustee's constructively fraudulent transfer claims, Counts
  Three, Five, Six and Seven, Defendants argue that they gave "value" and "fair
  consideration" for the transfers.  (MTD 6-11).  Defendants' argument is premised
  upon and necessarily requires resolution of disputed issues of fact—namely the
  Defendants' good faith, and is not properly resolved at this stage of the
  proceeding;

---

[3] *Picard v. Cohmad Secs. Corporation (In re Bernard L. Madoff Inv. Secs., LLC)*, Adv. No. 09-1305
(BRL), __ B.R. __, 2011 WL 3274077, *9 (Bankr. S.D.N.Y. August 1, 2011).

[4] *Gowan v. The Patriot Group, LLC, et al. (In re Dreier LLP)*, Adv. No. 10-03524, 2011 WL 2412581,
*33 (Bankr. S.D.N.Y. June 16, 2011)(Glenn, J.).

- Defendants' assertion that the Trustee's preference, constructive fraud, and actual fraud claims, Counts One, Three, Four, Five, Six and Seven, are barred under Section 546(e) of the Bankruptcy Code, is also without merit. (MTD at 37). This Court previously concluded that Section 546(e) of the Bankruptcy Code does not preclude the Trustee's claims, and has no application in the context of a Ponzi scheme where no securities transactions took place and there are no "settled" securities transactions to unwind;

- The Trustee's cause of action disallowing Defendant TSF's SIPA claims, Count Eight, is also well pled and should proceed, given the existence of fraudulent transfers, Defendant TSF's refusal to repay the fraudulent transfers, and the Trustee's right to avoid those transfers; and

- Finally, the Defendants' claim that the Court lack personal jurisdiction over Defendant TAM is unsupportable, given the fact that TAM held an account in New York with BLMIS for more than six years, and during that time received the benefit of and withdrew over $22 million from its account with BLMIS in New York.

The Defendants' Motion should be denied, and the Trustee respectfully requests that this Court move the case forward to the discovery stage without further delay.

## TRUSTEE'S ALLEGATIONS

### I.    THE BLMIS PONZI SCHEME

The Court is well-versed on the background facts to this case.  Madoff, through his company BLMIS, sold investors what he called a sophisticated "split strike conversion strategy" that would allow them to earn money on their investments in both good and bad times.  (SAC ¶¶ 25, 26).  His investment advisory business was virtually a complete fiction, and his scheme ultimately collapsed during the bear market in the autumn of 2008.  (SAC ¶¶ 29, 33).

### II.    DEFENDANTS ARE EXPERIENCED HEDGE FUND OPERATORS AND INVESTORS WHO TOUTED THEIR DILIGENCE ABILITIES

The Defendants hold themselves out as sophisticated investment funds with significant experience running and operating hedge funds, as well as selecting other hedge funds in which to invest. (SAC ¶ 50).  The Defendants were, and continue to be, operated and managed by

experienced professional hedge fund investment entities, including Thybo Advisory, S.A.M. and

U.B.S. (Luxembourg) SA.  Defendants' contention that they were not knowledgeable investors,

is belied by their own words:

> [Thybo's] first investments in hedge funds date back to 1989.  As
> such [Thybo was] one of the earlier European investors in hedge
> funds.  Thybo Investments benefits from a highly experienced and
> seasoned team of professionals.  Core members of the team have
> extensive direct investment trading experience, and have either
> managed FoHF [Fund of Hedge Fund] portfolios and/or have run
> individual hedge funds or hedge fund strategies.

(*See* Exhibit D to SAC at heading "Why Thybo—Longevity and Experience.")

In addition, the Defendants' website touts their due diligence, stating that Thybo "take[s]

a careful and comprehensive approach to investing in hedge funds.  [Thybo's] selection criteria

are strict and our pre-investment due diligence extensive.  Excellent risk-adjusted returns to

investors have resulted from this process." (SAC, Exhibit D).

The Defendants first opened an account with BLMIS on or about August 1, 2000.  (SAC

¶ 45).  Over the course of the Defendants' investment with BLMIS, the Defendants collectively

withdrew over $62 million from their accounts with BLMIS. (SAC ¶ 103, Exhibits B and C).

For the alleged due diligence and management of the Defendants' investments with BLMIS, the

Defendants collected substantial fees.  (SAC ¶ 50, 88).  Significantly, BLMIS itself agreed to a

compensation structure that had BLMIS forgoing an estimated $8 million to $23 million in fees

for the benefit of the Defendants.  (SAC ¶87).

## III.    DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT BLMIS WAS A FRAUD

The Trustee has made detailed allegations to support his contention that the Defendants

knew or should have known that BLMIS was not a legitimate enterprise, requiring the

Defendants to undertake a reasonable, independent, and meaningful inquiry.  Contrary to the

4

Defendants' conclusory assertion, the Trustee's allegations in the Amended Complaint are neither limited to facts that were known to all investors in BLMIS, nor based on "rare and obscure discrepancies." (MTD at 1 and 2).  The Amended Complaint sets forth specific, detailed allegations of irregularities that occurred specifically within the Defendants' accounts, which were of the type that Defendants should have spotted, and which were recurring and apparent from the financial information the Defendants received from BLMIS.  For example:

- On eighty-six (86) separate occasions, transactions occurred in the Defendants' BLMIS accounts even when the cash necessary to execute those transactions was not available, despite the fact that the Defendants did not have a margin account with BLMIS and could not have traded on credit (SAC ¶ 89).  These "free margin loans," were readily apparent from the documents Defendants received from BLMIS;

- Defendants received trade confirmations that were plainly fraudulent in that prices listed were outside the trading ranges for the stocks supposedly traded on the days in question (SAC ¶ 64);

- Defendants received trade confirmations that demonstrated that Madoff was engaging in impossible stock transactions.  Forty-five percent (45%) of all options transactions BLMIS purported to engage in on behalf of TSF exceeded the daily market volume of corresponding options traded for those contracts on the relevant exchange (SAC ¶¶ 55-59);

- Defendants' statements reflected a consistent ability by BLMIS to buy below and sell above the daily midpoint, something no experienced investment professional could have reasonably believed could have been accomplished legitimately (SAC ¶¶ 72, 73);

- The Defendants' returns with BLMIS were suspiciously consistent and positive in the face of severely declining markets, and without any correlation to the S&P 100, outperforming the S&P 100 by fifteen to forty-six percent (15% to 46%), when the S&P 100 was suffering double-digit losses (SAC ¶¶ 67-69);

- BLMIS did not charge standard asset management fees, forgoing an estimated $8 million to $23 million in fees for the Defendants alone (SAC ¶ 87);

- BLMIS lacked transparency to investors, regulators, and other outside parties by failing to provide customers with real-time online access to their accounts, and excluding an independent custodian of securities (SAC ¶¶ 78-80);

- BLMIS had tens of billions in assets under management world-wide, yet was purportedly audited by a one-man accounting shop located in a strip mall (SAC ¶¶ 81-86).

The foregoing, together with the additional allegations contained in paragraphs 49 through 102 of the Amended Complaint, more than sufficiently plead that the Defendants knew or should have known that BLMIS was not legitimate.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARDS

#### A.    On A Motion To Dismiss, A Court Must Accept The Facts Alleged As True And Weigh All Reasonable Inferences In The Plaintiff's Favor

A court may dismiss a complaint under Fed. R. Civ. P. 12(b)(6), applicable to an adversary proceeding by Fed. R. Bankr. P. 7012, only if it is beyond doubt that the plaintiff would not be entitled to any form of relief, even if he proved the factual allegations in his complaint. *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 419 n.2 (Bankr. S.D.N.Y. 2005) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). "When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs. LLC)*, 440 B.R. 284, 253 (Bankr. S.D.N.Y. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

A complaint is generally required only to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint must state a plausible claim for relief, meaning that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In determining plausibility, a "[c]ourt must draw on its judicial experience and common sense to decide whether the factual allegations raise a right to relief above the

speculative level." *Merkin*, 440 B.R. at 254 (internal marks and citation omitted).

While allegations of fraud are held to the higher pleading standard of Rule 9(b), requiring

that the Complaint "state with particularity the circumstances constituting fraud,"[5] Fed. R. Civ.

P. 9(b); Fed. R. Bankr. P. 7009, "[g]reater liberality in the pleading of fraud is particularly

appropriate in bankruptcy cases, because . . . it is often the trustee, a third party outsider to the

fraudulent transaction, that must plead the fraud on secondhand knowledge for the benefit of the

estate and all of its creditors." *Merkin*, 440 B.R. at 254 (quoting *Sec. Investor Prot. Corp. v.*

*Stratton Oakmont, Inc.,* 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (internal marks and citation

omitted), *aff'd*, 818 F.2d 240 (2d Cir. 1987)); *Picard v. Chais* (*In re Bernard L. Madoff*

*Investment Securities, LLC*), 445 B.R. 206, 219 (Bankr. S.D.N.Y. Feb. 24, 2011); *Boykin v.*

*KeyCorp.*, 521 F.3d 202, 215 (2d Cir. 2008) (even under Rule 9(b) "allegations may be based on

information and belief when facts are peculiarly within the opposing party's knowledge.")

(internal marks and citation omitted). Rule 9(b) permits "[m]alice, intent, knowledge, and other

conditions of a person's mind" to be pled generally. Fed. R. Civ. P. 9(b).

**B.    Disputed Issues of Fact Surrounding The Defendants' "Good Faith"
         Arguments Are Not Appropriately Resolved At The Motion To Dismiss Stage**

The Trustee need not plead or prove the Defendants' actual knowledge for any claim he

has asserted.[6] Instead, as to the Trustee's actual fraud claims (Counts Two and Four), it is the

---

[5] Rule 9(b) does not apply to allegations of constructive fraud. *Cohmad*, 2011 WL 3274077, *10; *Merkin*, 440 B.R. at 261 (*citing Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005)). As to actually fraudulent transfer claims under the Bankruptcy Code and NYDCL, the fraudulent intent that must be pled in conformance with Rule 9(b) is that of the transferor alone—in this case BLMIS. *Cohmad*, 2011 WL 3274077, *9.

[6] Evidence that would support Defendants' knowledge is uniquely within the possession and control of the Defendants, and have not yet been produced by the Defendants or otherwise explored through meaningful discovery. At this stage, since no discovery has been completed and no documents have been produced by the Defendants, arguments regarding the Defendants actual knowledge of the fraud are premature. *In re Dreier LLP*, 2011 WL 2412581, *32-33 ("the transferee's actual fraudulent intent is considered at the summary judgment phase or at trial on a full evidentiary record").

Defendants who must prove that they received the transfers in "good faith," to assert a valid

defense. *Cohmad*, 2011 WL 3274077, *9.   A lack of "good faith" in this context does not

require that the Defendants knowingly participated in the fraud, had actual guilty knowledge or

subjectively believed that BLMIS was a Ponzi scheme.   Rather, the relevant inquiry is whether

the Defendants were aware of facts that would have put a reasonable and similarly situated

investor on notice of the fraudulent activity and, if so, whether they conducted a diligent

investigation.  *See, e.g., HBE Leasing Corp. v. Frank ("HBE Leasing Corp. I")*, 48 F.3d 623, 636

(2d Cir. 1995) (discussing the knowledge standard under NYDCL and stating that

"[c]onstructive knowledge of fraudulent schemes will be attributable to the transferees who were

aware of circumstances that should have led them to inquire further into the transaction . . .")*; In

re Bayou Group ("Bayou IV")*, 439 B.R. 284, 310-314 (S.D.N.Y. 2010) (explaining that one

element of the good faith test under Bankruptcy Code Section 548(c) is "whether the transferee

had information that put it on *inquiry notice*" and the other is whether such transferee performed

a diligent investigation).  The Trustee has alleged facts sufficient to meet this pleading standard

and to permit this matter to proceed to discovery.  Indeed, issues relating to a defendant's good

faith are fact intensive issues that are ill-suited for summary judgment after full discovery, *see,

e.g., Bayou IV*, 439 B.R. at 314-329, much less are they appropriate for a motion to dismiss

before any discovery has occurred.  *See Merkin*, 440 B.R. at 256 ("whether the Moving

Defendants accepted in good faith [under section 548(c)] when they allegedly accepted hundreds

of millions of dollars in transfers of BLMIS funds is a disputed issue that this Court can properly

determine only upon consideration of all of the relevant evidence obtained through the discovery

process").

II.    **THE TRUSTEE HAS SUFFICIENTLY PLED CLAIMS FOR ACTUALLY
FRAUDULENT TRANSFERS UNDER THE BANKRUPTCY CODE AND NYDCL**

In Counts Two and Four of the Amended Complaint, the Trustee has alleged claims

against the Defendants to avoid and recover actual fraudulent transfers pursuant to sections

548(a)(1)(A), 544, 550(a) and 551 of the Bankruptcy Code and sections 276, 278, and/or 279 of

the NYDCL.  The Trustee's claims under both the Bankruptcy Code and NYDCL have been

adequately pled.

To state a prima facie case of actual fraud under both the Bankruptcy Code and the

NYDCL, "a party must ordinarily allege: (1) the property that was conveyed; (2) the timing and,

if applicable, frequency of the transfer; and (3) the consideration paid for the transfer." *Cohmad*,

2011 WL 3274077, * 7 (citing *United Features Syndicate, Inc. v. Miller Features Syndicate,

Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002)).  Here, it is undisputed that the Trustee has

adequately pled with sufficient detail and particularity the transfers from BLMIS to the

Defendants during the operation of the Ponzi scheme, which the Trustee seeks to avoid.  (SAC

¶¶ 103-114, and Exhibits B and C).  Specifically, Exhibit A to the Amended Complaint contains

an index of the BLMIS accounts maintained by each of the Defendants, identifying each account

by name and number.  Each withdrawal by the Defendants from their respective BLMIS

accounts is identified in Exhibits B and C to the Amended Complaint, detailing the transfers at

issue, specifying the date, account number, transferor, transferee, method of transfer, and amount

transferred.  This Court has previously concluded that such allegations meet the requisite

particularity requirements under Rule 9(b) to identify the fraudulent transfers to be avoided

under section 548(a)(1)(A) of the Bankruptcy Code and section 276 of the NYDCL in this case.

*Cohmad*, 2011 WL 3274077, * 7-*8.

A.    **The Trustee Has Adequately Alleged Fraudulent Intent By Virtue Of The Ponzi Scheme Presumption**

If a transferor makes a transfer with fraudulent intent, that transfer is avoidable as a fraudulent transfer under Section 548(a)(1)(A) of the Bankruptcy Code.  11 U.S.C. § 548(a)(1)(A); *Cohmad*, 2011 WL 3274077, * 8; *see also Bayou IV*, 439 B.R. at 304; *Bayou Superfund, LLC v. WAM Long/Short Fund II, LLP (In re Bayou Group, LLC) ("Bayou I")*, 362 B.R. 624, 630 (Bankr. S.D.N.Y. 2007) (stating that under actual fraud "the entirety of redemption payments made to investors may be avoided including repayments of principal actually invested by the defendants").  Similarly, under section 276 of the NYDCL, a trustee may avoid any "conveyance made . . . with actual intent . . . to hinder, delay, or defraud either present or future creditors." NYDCL § 276.

Here, the fraudulent intent element under both the Bankruptcy Code and NYDCL is established as a matter of law by virtue of the Ponzi scheme presumption.  *Cohmad*, 2011 WL 3274077, * 8; *In re Dreier LLP*, 2011 WL 2412581, *33.  Because transfers made during the course of a Ponzi scheme are made for no purpose other than to hinder, delay or defraud creditors, it is well-established that the fraudulent intent of the transferor is presumed as a matter of law when the transfer is made in the course of a Ponzi operation.  *See Gredd v. Bear Stearns Secs. Corp. (In re Manhattan Inv. Fund, Ltd.*), 359 B.R. 510, 517-18 (Bankr. S.D.N.Y. 2007) (Lifland, J.) ("*Manhattan Inv. I*"), *aff'd in part, rev'd in part on other grounds*, 397 B.R. 1, 11-14 ("*Manhattan Inv. II*") (S.D.N.Y. 2007); *Bayou IV*, 439 B.R. at 306, n.19.  As this Court has now repeatedly held in applying the Ponzi scheme presumption to BLMIS-related claims, "the breadth and notoriety of the Madoff Ponzi scheme leave no basis for disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission."  *Cohmad*, 2011 WL 3274077, * 8; *Chais*, 445 B.R. at 220; *Merkin*, 440 B.R. at 255;

10

*see also Manhattan Inv. II*, 397 B.R. at 12 (relying on transferor's criminal guilty plea to establish the existence of a Ponzi scheme).[7]

### B.       The Trustee Need Not Plead Transferee Intent Under The NYDCL

The Defendants argue that Count Four of the Amended Complaint should be dismissed because they contend that the Trustee is required to additionally plead fraudulent intent on the *transferee's* part to prove an actually fraudulent transfer claim under NYDCL § 276. (MTD at 12-22). The Defendants are wrong and their argument is contrary to the recent decisions of this Court in *Cohmad* and Judge Martin Glenn's decision in *Dreier*.

As this Court made clear in its decision in *Cohmad*, the requisite fraudulent intent under NYDCL § 276 is that of the transferor alone—not the transferee. *Cohmad*, 2011 WL 3274077, \*9. In *Cohmad*, this Court held, in concurrence with the reasoning of the *Dreier* Court, that "the statutory text of section 276 and its relationship to the overall framework of the NYDCL supports the conclusion that only the fraudulent intent of the debtor/transferor is required to state a prima facie claim to avoid actual fraudulent transfers under the NYDCL." *Id.* (citing *In re Dreier LLP*, 2011 WL 2412581, \*30-32).

Both this Court and the *Dreier* Court held that the plain language of the text of NYDCL §

---

[7] Defendants argue—without support—that the Ponzi scheme presumption is limited to cases against "net winners," and not to avoidance claims against net losers. (MTD at 26-27). This Court, however, has previously ruled that the Ponzi scheme presumption is applicable and establishes as a matter of law, the transferor's fraudulent intent, in matters seeking to avoid transfers of principal investments from "net losers." *See Merkin,* 440 B.R. at 255; *Picard v. Harley International (Cayman) Limited*, Adv. Pro. No. 09-1187 (BRL), (Bankr. S.D.N.Y. November 10, 2010)*,* Docket No. 15. Moreover, contrary to the Defendants' pronouncement in the Motion, the Ponzi scheme presumption has been applied to fraudulent transfer claims seeking the return of principal from net losers in matters outside of this SIPC proceeding. *See, e.g., Bayou IV*, 439 B.R. at 290, 304-06 (applying Ponzi scheme presumption where redemption payments transferred to scheme investors included both principal and profit); *Gowan v. Novator Credit Management, et al. (In re Dreier LLP) ("Novator Credit Management")*, Adv. No. 10-04278, 2011 WL 2412608, \*11 (Bankr. S.D.N.Y. June 16, 2011) (Glenn, J.) (actually fraudulent conveyance claim against net loser was properly stated because the transferor's fraudulent intent was established by virtue of the Ponzi scheme presumption).

276, when "juxtaposed against other sections of the NYDCL compel the conclusion that it is the transferor's intent alone, and not the intent of the transferee that is relevant under NYDCL § 276." *In re Dreier LLP*, 2011 WL 2412581, at *32; *Cohmad*, 2011 WL 3274077, *9. (comparing Section 276, which addresses intent only with respect to the conveyance being made, to Section 276-a, which requires that the "conveyance is found to have been made by the debtor *and received by the transferee with actual intent*" (emphasis added)).  In addition, the incorporation into the NYDCL of a good faith affirmative defense under NYDCL § 278(1), similar to the affirmative defense available to a defendant under § 548(c) of the Bankruptcy Code, provides further evidence and support for the Court's conclusion that "the transferee's intent is irrelevant at the motion to dismiss stage." *In re Dreier LLP*, 2011 WL 2412581, at *32-33.

> As an affirmative defense, section 278 requires that the transferee's intent be considered "at the summary judgment phase or at trial on a full evidentiary record."  Therefore, "[i]f the Trustee meets the evidentiary burden of proving a prima facie case of actual fraud . . . the burden shifts to the transferee to establish the affirmative defense . . . ."  Accordingly, a defendant's good faith "need not be negated by the Trustee in the Complaint."

*Cohmad*, 2011 WL 3274077, *9 (quoting *In re Dreier LLP*, 2011 WL 2412581, at *33, quoting *Stratton Oakmont,* 234 B.R. at 318).

This Court's opinion in *Cohmad*, as well as Judge Glenn's decision in *Dreier*, conclusively disposes of Defendants' argument for dismissal of the Trustee's actual fraud claim under NYDCL (MTD at 12-22).  Applying the Ponzi Scheme presumption to the facts alleged in the Amended Complaint leads to the inevitable conclusion that the Trustee has adequately pled his actually fraudulent transfer claims under the Bankruptcy Code and NYDCL § 276, and the Defendants' motion to dismiss Counts Two and Four of the Amended Complaint should be

denied.  *Cohmad*, 2011 WL 3274077, *8; *Merkin*, 440 B.R. at 255-256; *In re Dreier LLP*, 2011

WL 2412581, * 33; *Novator Credit Management*, 2011 WL 2412608, *11

### C.    Defendants' Fact-Based Arguments Regarding Transferee Intent Are Irrelevant And Without Merit

In light of this Court's ruling in *Cohmad* that transferee intent need not be pled to state an

actual fraud claim under NYDCL, Defendants' arguments regarding the sufficiency of the

Trustee's allegations concerning the Defendants/transferees' fraudulent intent are irrelevant and

not appropriately considered on a motion to dismiss.  *See* MTD at 15-22.  It is the Defendants'

burden to plead and prove at trial that they received the transfers at issue in good faith and in

exchange for value as affirmative defenses to the Trustee's actual fraud claims under the

Bankruptcy Code and NYDCL.  *Cohmad*, 2011 WL 3274077, *9 (citations omitted); *In re*

*Dreier LLP*, 2011 WL 2412581, *32-33 ("the transferee's actual fraudulent intent is considered

at the summary judgment phase or at trial on a full evidentiary record"); *Merkin*, 440 B.R. at

256, 257 (arguments regarding transferee's good faith "are irrelevant to the Trustee's pleading

requirements, and thus ineffective in dismissing the Trustee's Code based actual fraud claims";

whether the defendants acted in good faith when they received the transfers from BLMIS "is a

disputed issued that this Court can properly determine only upon consideration of all of the

relevant evidence obtained through the discovery process"); *United States v. Orozco-Prada*, 636

F. Supp. 1537, 1541 (S.D.N.Y. 1986) ("Proof of actual fraudulent intent makes a prima facie

case [under NYDCL] and shifts to the [transferee] the burden of establishing his good faith in the

transfer").  These affirmative defenses are not appropriately considered at the motion to dismiss

stage, and need not be negated by the Trustee in the Complaint to survive Defendants' motion to

dismiss.  *Cohmad*, 2011 WL 3274077, *9 ("a defendant's good faith need not be negated by the

Trustee in the Complaint.") (citations omitted); *In re Dreier LLP*, 2011 WL 2412581, *32-33

("On a motion to dismiss, the trustee only needs to allege a prima facie case of actual fraud. If

the trustee meets the evidentiary burden of proving a prima facie case of actual fraud at trial, in

order to retain the transfer the burden shifts to the transferee to establish the affirmative defense

under § 278 by establishing that the transferee received the transfer 'for fair consideration' and

'without knowledge of the fraud.'") (citations omitted).

### 1.    Defendants' Reliance On Federal Securities Law Decisions Is Misplaced

Even if the Trustee were required to plead intent of the transferee, the Defendants'

arguments regarding the applicable pleading standard also miss the mark. The Defendants rely

erroneously on cases that do not involve avoidance actions asserted by a trustee, but instead

address heightened pleading and scienter requirements for federal securities law actions.[8]

Securities claims, such as the ones at issue in *South Cherry Street, LLC v. Hennessee

Group, LLC*, 573 F. 3d 98 (2d Cir. 2009), are governed by, among other things, the Private

Securities Litigation Reform Act ("PSLRA"), and have a heightened pleading standard. 573

F.3d at 110. To determine whether a complaint's scienter allegations are sufficient to survive a

motion to dismiss, courts engage in a comparative evaluation and consider, not only inferences

urged by the plaintiff, but also any opposing inference of nonfraudulent intent that may be drawn

from the facts alleged. *Id.* at 110-111.

In *South Cherry*, after engaging in this comparative analysis, the Court concluded that the

---

[8] *See In re Tremont Sec. Law, State Law, & Ins. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010); *SEC v. Cohmad Sec. Corp.*, No. 09 Civ 5689 (LLS), 2010 WL 363844, *2-3 (S.D.N.Y. Feb. 2, 2010) (Stanton, J.); *Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*, 703 F. Supp. 2d 362, 412 (S.D.N.Y. 2010); *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 619-620 (S.D.N.Y. 2010); *In re Beacon Assocs. Litig.*, 745 F. Supp.2d 386, 404 (S.D.N.Y. 2010); *In re J.P. Jeanneret Assocs., Inc.*, 2011 WL 335594, *9 (S.D.N.Y. Jan. 31, 2011); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 308-311; *Schulman v. Delaire*, No. 10 Civ. 3639 (HB), 2011 WL 672002, *2 (S.D.N.Y. Feb. 22, 2011), all analyzing securities fraud claims and the element of scienter—none involving claims asserted by a trustee in bankruptcy; *See also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 142-43 (S.D.N.Y. 2010), *aff'd in part*, __ F. 3d__, 2011 WL 2640579 (2d Cir. July 7, 2011) (RICO action addressing scienter requirement).

inferences advocated by the plaintiff were not as compelling as the competing inference of

negligence, as urged by the defendants, and therefore found that the necessary element of

scienter had not been met. *Id.* at 114.

The Trustee's fraudulent conveyance claims against the Defendants are not governed by

the PSLRA, do not require the Trustee to plead scienter, and the comparative analysis that was

applied in *South Cherry* and the other PSLRA actions relied upon by the Defendants are,

therefore, inapplicable. As this Court held in *Cohmad*:

> the legal standard applicable to the [Trustee's] bankruptcy claims .
> . . is not equivalent to that of the securities law claims . . . . As an
> element of its *prima facie* case for the Securities Claims, the SEC
> was required to plead scienter, or fraudulent intent, on the part of
> the SEC Defendants. . . . By contrast, the avoidance actions
> asserted in the instant Complaint do not require the Trustee to
> establish fraudulent intent on the part of the transferees at this stage
> of the proceedings.

2011 WL 3274077, *13, n.16. (citations omitted). "The allegations here, which are not evaluated

under the securities law standard of scienter . . . , are sufficient under applicable case law to raise

the curtain for discovery into the Trustee's claims." *Id.*

### 2. Defendants' Alleged Pattern Of Investments With BLMIS Is Not Dispositive Of Intent

The Defendants further assert that because they left more money with BLMIS than they

withdrew, the implication should be drawn that the Defendants did not know or suspect that

Madoff was a fraud. (MTD at 21-22). As a preliminary matter, this is an inappropriate argument

for a motion to dismiss, since the Defendants are asking this Court to draw an inference in their

favor with respect to a disputed issue of fact, namely whether the Defendants knew or should

have known that BLMIS was a fraud. *See Merkin*, 440 B.R. at 253 ("When considering a motion

to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true

and draw all reasonable inferences in plaintiff's favor") (citations omitted). Moreover, there is

no legal authority for Defendants' proposition that there is some "magical pattern" of withdrawals that will prove that the Defendants acted in good faith.[9]  Ultimately, it remains the burden of the Defendants to prove following discovery their alleged "good faith" by a preponderance of the evidence.  *Cohmad*, 2011 WL 3274077, *9 (arguments that transfers accepted by Defendants in good faith "will become relevant only as affirmative defense to be asserted at trial").

### D.     Defendants' Misconstrue The *Irving Trust* And *Sharp* Decisions

Defendants further attempt to avoid liability for the fraudulent transfers they received by mischaracterizing them as mere payments of antecedent debts,[10] or a return of their own money,[11] relying on *Irving Trust Co. v. Chase Nat. Bank*, 65 F.2d 409 (2d Cir. 1933), a pre-Bankruptcy Code decision, and overextending and misstating the holding of the Second Circuit's decision in *In re Sharp Int.'l Corp. v. State Bank & Trust Co. (In re Sharp Int.'l Corp.)*, 403 F.3d 43 (2d Cir. 2005).  (MTD at 23-30).  The Defendants' arguments are flawed, and do not alter the

---

[9] That said, there are a myriad of reasons why the Defendants may have chosen to leave their investments with BLMIS, despite the "red flags" that existed, which will be addressed during discovery.  The only way the Defendants may prove their intent and good faith is through providing complete discovery.

[10] Defendants' argument improperly assumes that their affirmative defense—that that they acted in good faith and provided value—is valid.  Defendants' good faith defense, however, is not conceded, but a disputed issue of fact.  *See* SAC ¶¶ 49-102 (allegations that Defendants knew or should have known that BLMIS was not a legitimate operation).  There is no valid antecedent debt, if as the Trustee contends, the Defendants knew or should have known that BLMIS was a fraud.   As this Court explained in *Merkin*, "if the consideration for a transfer is satisfaction of an antecedent debt, the debt must be legally enforceable.  Since investors in a Ponzi scheme are entitled to only an equitable right of repayment, there can be no legally enforceable debt if the investors acted in bad faith."  *Merkin*, 440 B.R. at 263.  *See also* Trustee's argument at Section III.A., below regarding analysis that transfers to the Defendants are not payments of antecedent debts, due to Defendants' lack of good faith.

[11] Defendants argue that the money they withdrew from BLMIS was not "other people's money," but simply a return of their own money, and as a result their withdrawals had no impact on other Madoff investors.  This position is false, contrary to the facts pled in the Amended Complaint, and at odds with the essence of a Ponzi scheme.  *In re Dreier LLP,* WL 2412581, *4 ("Distributing funds to earlier investors from the receipt of monies from later investors is the hallmark of Ponzi schemes.") (citing *Hayes v. Palm Seedlings Partners-A (In re Agric. Research and Tech. Grp., Inc.)*, 916 F.2d 528, 536 (9th Cir. 1990), additional citations omitted).

conclusion that as a matter of law the Trustee has adequately pled actually fraudulent transfer claims under the Bankruptcy Code and NYDCL.

Citing *Irving Trust*, the Defendants, argue that to adequately plead a fraudulent conveyance claim against them, the Trustee has the obligation to plead facts demonstrating that the Defendants had actual knowledge of BLMIS's fraudulent intent, and participated in BLMIS's fraud. (MTD at 24-25).  Significantly, the Court in *Irving Trust* did not evaluate the pleading standards under section 548(a)(1)(A) of the Bankruptcy Code or the NYDCL.  Further, the *Irving Trust* decision is factually distinct, and inapplicable to the Trustee's allegations.  In *Irving Trust*, the Court found that the fraudulent conveyance claim under Section 67e of the Bankruptcy Act was inadequately pled due to the plaintiff's failure to plead how the debtor's creditors were to be hindered or defrauded, and because the plaintiff affirmatively pled that the recipient of the alleged fraudulent transfer received it in good faith, without knowledge.  *Id.* at 410-412.

Here, unlike in *Irving Trust*, the fraud being addressed arises from a Ponzi scheme, where as a matter of law, the courts presume that the payments being made are for no purposes other than to hinder, delay and defraud creditors.  As a result, the *Irving Trust* Court's analysis that the bankruptcy trustee had not adequately pled facts necessary to demonstrate the debtor's intent to hinder or defraud its creditors in a non-Ponzi scheme, is inapplicable.[12]

Defendants' reliance on *In re Sharp Int.'l Corp.* ("*Sharp*") for the proposition that their "antecedent debt" repayments cannot be avoided as fraudulent transfers is also unavailing. (MTD at 28-30).  To the contrary, the *Sharp* Court makes plain that "where actual intent to

---

[12] In addition, the Defendants' alleged good faith is not conceded here as it was in *Irving Trust*. Defendants' lack of good faith is a disputed issue of fact, which is not appropriately addressed through a motion to dismiss.  *Cohmad*, 2011 WL 3274077, *9 ("arguments that [Defendants] accepted transfers in good faith and in exchange for value will become relevant only as affirmative defenses to be asserted at trial under section 548(c) of the Code and section 278 of NYDCL").

defraud creditors is proven, the conveyance will be set aside *regardless of the adequacy of consideration given*." *Sharp*, 403 F.3d at 56 (citing *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994)) (emphasis added).[13]

To be sure, other cases involving Ponzi schemes have all rejected extending *Sharp* to Ponzi schemes. *See In re Dreier LLP*, 2011 WL 2412581, *25 (holding that the *Sharp* decision did not limit the application of the Ponzi scheme presumption and citing string of post-*Sharp* decisions applying the Ponzi scheme presumption); *Bayou IV*, 439 B.R. at 302; *Manhattan Inv. III*, 397 B.R. at 11; *Armstrong v. Collins*, No. 01-02437, 2011 WL 308260, *2 (S.D.N.Y. Jan. 31, 2011). Here, as in his avoidance actions against other defendants, the Trustee has pled that each and every transfer made to the Defendants was made for the fraudulent purpose of perpetuating the BLMIS Ponzi scheme. As the district court noted in *Bayou IV*, the circumstances of the claims at issue "could not be more different" than the claims in *Sharp* because they were made "[t]o avoid detection of the fraud, to retain existing investors and to lure new investors," and constituted "an integral and essential element of the alleged fraud, necessary to validate the false financials and to avoid disclosure." *Bayou IV*, 439 B.R. at 302 (quoting *In re Bayou Group, LLC ("Bayou II")*, 372 B.R. 661, 663 (Bankr. S.D.N.Y. 2007)). The Trustee has sufficiently pled actually fraudulent transfer claims against the Defendants under the Bankruptcy Code and NYDCL, and nothing in the *Irving Trust* or *Sharp* decisions changes that conclusion. *See In re*

---

[13] The facts in *Sharp* are also distinct from those here. *Sharp* did not involve either a Ponzi scheme or the Ponzi scheme presumption, but a valid transaction pre-dating the fraud. "[T]he transaction at issue in *Sharp* was different from the typical transaction in a Ponzi scheme. In *Sharp*, the transfer at issue was the repayment of a debt that was *antecedent to the company's fraud*." *Manhattan Inv. II*, 397 B.R. at 11 (emphasis added). "In contrast, in a Ponzi scheme, the transfers sought to be avoided occur as part of the fraud. They are not made to repay loans or services that preceded the fraud and were unrelated to it. For this reason, the transfer in *Sharp* is factually distinguishable from the typical transfers in a Ponzi scheme case." *Manhattan Inv. II*, 397 B.R. at 10-11 ("*Sharp* did not involve a Ponzi scheme and the court did not discuss the Ponzi scheme presumption. Therefore, there is no reason to ignore the long line of cases that support the presumption's continuing existence").

*Dreier LLP*, 2011 WL 2412581, *33, n. 39 (court rejected argument "that transfers cannot be avoided under NYDCL § 276 because they were payments of a valid antecedent debt under cases such as *Irving Trust*").

### III.    THE TRUSTEE HAS SUFFICIENTLY PLED CLAIMS FOR CONSTRUCTIVELY FRAUDULENT TRANSFERS UNDER FEDERAL AND STATE LAW

#### A.    The Trustee Has Alleged That The Defendants Did Not Provide Reasonably Equivalent Value Under The Bankruptcy Code

Under the Bankruptcy Code, a transfer is constructively fraudulent when the debtor transfers an interest in property for which the transferee does not provide "reasonably equivalent value" while the debtor is insolvent. 11 U.S.C. § 548(a)(1)(B). Defendants argue that the Trustee's constructive fraud claims against them fail as a matter of law due to courts' universal recognition that the victim of a Ponzi scheme gives reasonably equivalent value in exchange for any withdrawals they make up to the extent of their principal investments. (MTD at 7). The Defendants' argument, however, is flawed because it relies on a critical factual issue in dispute— whether the Defendants are innocent investors, acting in "good faith," which is not properly resolved through a motion to dismiss. *Merkin*, 440 B.R. at 262 ("argument is faulty because it relies on the premise that the Moving Defendants are "innocent" investors entitled to restitution").

An investor in a Ponzi scheme does not, strictly speaking, provide "value" by the mere receipt of payment after an investment. *See Armstrong v. Collins*, 2010 U.S. Dist. LEXIS 28075, at *67 (S.D.N.Y. Mar. 24, 2010). A good faith investor generally will nonetheless be entitled to a claim of rescission and/or restitution to recover 100% of the amount of his investment due to the fraud perpetrated by the debtor. *See Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.* (*In re Bayou Group, LLC*) (*"Bayou III"*), 396 B.R. 810, 844

19

(Bankr. S.D.N.Y. 2008), *rev'd on other grounds,* 439 B.R. 284 (S.D.N.Y. 2010).  Therefore, although the investment itself does not constitute value, courts have found "value" to have been given in the form of the release of such an investor's rescission claim.  But "only *innocent* investors who reasonably believed that they were investing in a legitimate enterprise are entitled to claims for restitution."  *Merkin*, 440 B.R. at 262 (emphasis provided); *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) (finding that "good faith" investors in a Ponzi scheme had a claim for restitution up to the amount of their investment); *cf. Wyle v. C.H. Rider & Family* (*In re United Energy Corp.*)*,* 944 F.2d 589, 596 n.7 (9th Cir. 1991) ("If investments were made with culpable knowledge, all subsequent payments made to such investors within one year of the debtors' bankruptcy would be avoidable under section 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments.").

### 1.    Defendants Were Not Innocent Investors

The Trustee here has amply alleged at this stage that the Defendants were not "innocent" investors, because they knew or should have known of Madoff's fraud.  *See Merkin*, 440 B.R. at 263.  (*See generally* SAC at ¶¶ 49-102.)

Despite Defendants' contention that the Trustee's allegations are limited to "rare and obscure account discrepancies," (MTD at 2), a cursory review of the Amended Complaint shows otherwise.   By way of example, Defendants, were sophisticated, experienced investors in other hedge funds, touted their due diligence practices, and failed to investigate facially impossible transactions occurring in their BLMIS accounts. (SAC ¶¶56-59, 64, 89).  Far from being rare or obscure account discrepancies, the allegations by the Trustee describe frequent instances of impossible transactions in the Defendants' accounts.  During the course of the Defendants' investment with BLMIS, <u>forty-five percent</u> (45%) of <u>all</u> <u>options transactions</u> BLMIS purported

to engage in on behalf of Defendant TSF exceeded the daily market volume of corresponding

options traded for those contracts on the relevant exchange.  (SAC ¶ 58).  The Defendants, are

alleged to have performed no independent, reasonable, or meaningful due diligence or make

further inquiry regarding these impossible transactions.  (SAC ¶ 59).

Defendants also ignored the implications of receiving "free margin loans," for millions of

dollars from BLMIS.  (SAC ¶ 89).  On 86 separate occasions, transactions occurred in the

Defendants' accounts even when the cash necessary to execute those transactions was not

available.  *Id.*  Defendants did not have a margin account with BLMIS and could not have traded

on credit.  *Id.*  Again, this was not a rare or obscure account discrepancy.  It was facial evidence

of fraud, that Defendants ignored and/or failed to reasonably investigate.

The Defendants turned a "blind eye" and failed to investigate the "constant abnormally

profitable and consistent returns," reflected in their account statements.  (SAC ¶¶ 65-69).

Defendant TAM only experienced 3 months of negative returns during the 75-month period from

August 2000 through October 2006, during which it was a customer of BLMIS.  (SAC ¶68).

During that same period, the S&P 100 index had 35 months of negative returns.  *Id.*  Defendant

TSF had negative returns in only one month during its 26 months of activity, from its initial

investment with BLMIS in October 2006 through its last account statement in November 2008.

The S&P 100 index had 12 months of negative returns over the same period.  *Id.*  The

Defendants knew or should have known that these implausibly consistent rates of return, even in

market downturns, were not possible through legitimate securities trading.  *Id.*

The totality of the Trustee's allegations demonstrate that the Defendants were faced with

too many red flags to ignore that their investment returns with BLMIS might be the product of

fraudulent activity.  (SAC ¶¶ 49-102); *Cohmad*, 2011 WL 3274077, at *11 (providing that the

court should "examine the totality of the circumstances" in determining "the good faith of the

transferee") (quoting *Gonzalez v. Wells Fargo Bank, N.A ( In re Gonzalez)*, 342 B.R. 165, 173

(Bankr. S.D.N.Y. 2006));  (citations omitted); *Manhattan Inv. III*, 397 B.R. at 23 (approving  this

Court's determination that the defendant in that case was on inquiry notice based on multiple

facts).  In the face of this and other indicia of fraud, the Defendants chose to remain willfully

blind and failed to conduct any reasonable, independent or meaningful due diligence precluding

a "good faith" defense.[14]

> **2.    Defendants' Innocence And Exchange Of Value Are Disputed
> Issues Of Fact**

As this Court noted in *Merkin*, the question of whether the defendants gave "reasonably

equivalent value" is fact intensive and inappropriate for a motion to dismiss.  *Merkin*, 440 B.R. at

263.*; see also Cohmad*, 2011 WL 3274077 ("Defendants' arguments that they accepted the

transfers in good faith and in exchange for value will become relevant only as affirmative

defenses to be asserted at trial").  Assuming the allegations in the Amended Complaint are true

and drawing all reasonable inferences in favor of the Trustee, as the law requires at this stage, the

Defendants cannot be found to have given reasonably equivalent value in exchange for their

receipt of transfers.  *See Merkin*, 440 B.R. at 262-63.  The cases cited by Defendants do not

suggest otherwise.[15]

---

[14] Once on inquiry notice, unless a defendant conducts a diligent investigation, it cannot carry its burden
of establishing good faith.  *Manhattan II*, 397 B.R. at 25 n.39 ("[g]iven what [Defendants] learned, taking
no steps at all. . . amounted to willful ignorance, which . . . defeat[s] the good faith defense."); *Armstrong*,
2010 U.S. Dist. LEXIS 28075, at *82-83; *In re Gosman*, 2005 Bankr. LEXIS 3183, at *52 (Bankr. S.D.
Fla. Mar. 1, 2005); *Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 599
(Bankr. M.D. Fl. 2002); *HBE Leasing Corp. I*, 48 F.3d at 636 (Pursuant to NYDCL "*[c]onstructive
knowledge* of fraudulent schemes will be attributed to transferees who were aware of circumstances that
*should have* led them to inquire further into the circumstances of the transaction, but who failed to make
such inquiry.") (emphasis added).

[15] For example, in *Official Comm. Of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 547 (Bankr. D. Del. 2009), the court

> **B.    The Trustee Has Alleged That Defendants Did Not Provide Fair
>          Consideration Under The NYDCL**

The Defendants' argument that the Trustee has not sufficiently alleged a lack of fair

consideration in support of his constructive fraud claims under the NYDCL, Counts Five, Six

and Seven of the Amended Complaint, is also without merit.  Transfers for which BLMIS did not

receive "fair consideration" are constructively fraudulent under the NYDCL and may be set

aside and avoided.  *See* NYDCL § 273-275.  "Fair consideration is given for property, or

obligation . . . [w]hen in exchange for such property, or obligation, as a fair equivalent therefor,

and in good faith, property is conveyed or an antecedent debt is satisfied."  *Id.* § 272.  Thus,

under New York's constructive fraud statute, a transfer may be deemed legitimate only if a

defendant-transferee exchanges fair consideration for such transfer in good faith.  *See HBE*

*Leasing Corp. I,* 48 F.3d at 638*; Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 669

(Bankr. E.D.N.Y. 2008) ("[T]he concept of 'fair consideration' under the DCL contains two

components, the exchange of fair value and good faith—and both are required.").

Virtually all courts treat "fair consideration" as having the same meaning as "reasonably

equivalent value" for purposes of valuing the consideration given.  The issue of whether

---

stated that "[i]n determining the question of whether a debtor received reasonably equivalent value, a
court looks to the 'totality of the circumstances' of the transfer, including . . . the transferee's good faith"
(quoting *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp.
Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 213 (3d Cir. 2006)); *DiCello v.
Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 12 (Bankr. D.C. 1993) (trustee did not seek to
recover transfers up to amount of initial investment, and parties *stipulated* that defendant had claim for
return of initial investment); *In re United Energy Corp.*, 944 F.2d at 596, n.7 (stating that in recognizing
investors' claims for rescission and restitution, the court assumed that "the investors had no knowledge of
the fraud the debtors were perpetrating.  If investments were made with culpable knowledge, all
subsequent payments made to such investors within one year of the debtors' bankruptcy would be
avoidable under section 548(a)(2), regardless of the amount invested, because the debtors would not have
exchanged a reasonably equivalent value for the payments.") (*citing In re Indep. Clearing House Co.*, 77
B.R. 843, 857-58 (D.Utah 1987)); *In re First Commercial Mgmt. Grp.*, 279 B.R. 230, 240 (Bankr. N.D.
Ill. 2002) (specifically noting that there were *no allegations* that the defendants had knowledge that the
debtor's activities were fraudulent or of the debtor's Ponzi scheme or that defendants' own activities were
unlawful or wrongful in any respect).

Defendants have given reasonably equivalent value in exchange for the transfers, is a disputed

issue of fact (as argued *supra*).  In addition, NYDCL § 272 defining "fair consideration" also

contains an explicit good faith requirement.  *See, e.g., Mishkin v. Ensminger (In re Adler,*

*Coleman Clearing Corp.)*, 247 B.R. 51, 116 (Bankr. S.D.N.Y. 1999).  Under NYDCL § 272,

"[w]here [] a transferee has given equivalent value in exchange for the debtor's property, the

statutory requirement of 'good faith' is satisfied if the transferee acted *without either actual or*

*constructive knowledge* of any fraudulent scheme."  *HBE Leasing Corp. I*, 48 F.3d at 636

(emphasis added).

The Trustee has alleged that Defendants did not give fair consideration for the transfers

they received because the Defendants failed to act in good faith.  *See In re Jacobs*, 394 B.R. at

662.  As discussed above, the Amended Complaint details numerous facts demonstrating that

Defendants knew or should have known, at all relevant times, that they were participating in a

fraudulent enterprise, an enterprise that Madoff has admitted was a Ponzi scheme.  (*See*

*generally* SAC at ¶¶ 49-102).  By alleging that Defendants did not give consideration in good

faith, the Trustee has adequately pled specific facts that may lead this Court to determine that the

Defendants did not provide fair consideration under NYDCL §§ 272-275, in exchange for the

challenged transfers.  Accordingly, the Defendants' Motion to Dismiss Counts Five, Six, and

Seven of the Amended Complaint should be denied.

**C.   The Defendants Seek To Apply An Incorrect Standard To The Trustee's Constructive Fraud Claims Under the NYDCL**

Defendants argue the Trustee must satisfy an "exceedingly high standard" to sufficiently

allege a lack of good faith under NYDCL § 272, and must allege facts that the Defendants

knowingly participated in Madoff's fraud.  (MTD at 10, *citing Sharp*).  This is a misstatement of

the law.  *Cohmad*, 2011 WL 3274077, * 10 (citations omitted) ( heightened pleading

24

requirements of 9(b) do not apply to constructive fraud claims under the NYDCL or the

Bankruptcy Code); *HBE Leasing Corp. I*, 48 F.3d at 636 (the statutory requirement of 'good

faith' [under NYDCL § 272] is satisfied if the transferee acted *without either actual or

constructive knowledge* of any fraudulent scheme") (emphasis added); *Merkin*, 440 B.R. at 264

(in evaluating constructive fraud claim, "the sole consideration should be whether, consistent

with Rule 8(a), the complaint gives the defendant sufficient notice to prepare an answer, frame

discovery and defend against the charges") (quoting *Nisselson v. Drew Indus., Inc. (In re White

Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1998)).

This Court has already squarely rejected the argument being advanced by the Defendants

here that the *Sharp* holding is dispositive of the Trustee's constructive fraudulent conveyance

claims under New York law. *Merkin*, 440 B.R. at 265. The *Sharp* case is facially

distinguishable since it involved "an 'innocent' lender who acted in good faith at the time it

made the loan to the debtor." *Id.* Consequently, repayment of the loan in *Sharp* constituted fair

consideration under the NYDCL. *Id.* By contrast, in this case, the Defendants' innocence and

good faith are disputed. The Trustee has alleged facts demonstrating numerous indicia of fraud

that was accessible to the Defendants even prior to its first investment with BLMIS, including,

but not limited to:

- Madoff did not charge standard asset management fees, forgoing an estimated $8 million to $23 million in fees for the Defendants alone (SAC ¶¶87-88);

- BLMIS lacked transparency to investors, regulators and other outside parties by failing to provide customers with real-time online access to their accounts and excluding an independent custodian of securities (SAC ¶¶78-79);

- despite being a pioneer of electronic record-keeping, Madoff provided customers with paper trade confirmations days later (SAC ¶80);

- BLMIS' auditor was not competent or capable of performing audits of a fund the size of BLMIS (SAC ¶¶81-86).

Further, the Defendants made significant additional investments with BLMIS in July and August of 2002.[16]  By that point in time, the Defendants had been a customer of BLMIS for two years.  As alleged in the Amended Complaint, when those investments were made the Defendants knew or should have known of the fraud due to, among other things, the following facts:

- The options trade confirmations provided to the Defendants contained significant abnormalities (SAC at ¶60);

- There were not enough S&P 100 options available in the market for Madoff's trading strategy (SAC at ¶¶54-59);

- The time between the trade dates and settlement dates reflected on trade confirmations did not conform to standard market convention (SAC at ¶ 61);

- Madoff was supposedly executing hundreds of millions of dollars in options trades on behalf of the Defendants with anonymous counterparties (SAC at ¶¶62-63);

- BLMIS' returns were suspiciously consistent and positive in the face of declining markets, and without any correlation to the S&P 100, outperforming the S&P 100 by 15% to 33% percent, when the S&P 100 was suffering double digit losses in 2000, 2001 and 2002(SAC at ¶¶67-69);

- Madoff purported to execute trades that were inconsistent with his SSC strategy (SAC at ¶¶70-71);

- Madoff's suspicious ability to consistently buy below and sell above the daily midpoint (SAC at ¶¶ 72-73);

- Despite exorbitant trading volume there was never any impact on the market (SAC at ¶¶74-77);

- The Defendants at times had a negative cash balance with BLMIS, despite the fact that the Defendants did not have a margin account with BLMIS and could not have traded on credit (SAC at ¶¶89);

---

[16] After Thybo Asset Managements initial deposit of $5,999,990 on August 1, 2000, Thybo Asset Management made additional investments with BLMIS totaling $61,999,825 in July and August 2002. Almost one year later, Thybo Asset Management made its first withdrawal from BLMIS of $20 million on June 27, 2003.  (SAC Exhibit B).

- Industry periodicals published concerns about the very legitimacy of Madoff prior to the Defendants investments (SAC at ¶¶ 90-94).

As a result, whether the Defendants knew or should have known of the fraud at the time they transferred funds to BLMIS is a disputed issue of fact that should be explored through discovery. *See Cohmad*, 2011 WL 3274077, *13, n.16 ("The allegations here . . . are sufficient under the applicable case law to raise the curtain for discovery into the Trustee's claims"); *Merkin*, 440 B.R. at 266.

## IV. THE SAFE HARBOR OF SECTION 546(e) IS INAPPLICABLE TO THE TRANSFERS MADE TO DEFENDANTS IN FURTHERANCE OF THE PONZI SCHEME

The Defendants cannot satisfy their burden of demonstrating that the transfers they received from BLMIS should be afforded the "safe harbor protection" set forth in section 546(e) of the Code,[17] because the transfers were neither transfers made by a "stockbroker" "in connection with a securities contract" nor "settlement payments" within the meaning of the Bankruptcy Code.

### A. Section 546(e) Does Not Apply To Fictional Transactions

This Court has already rejected the application of the safe harbor of Section 546(e) to transfers made by BLMIS to investors in furtherance of the Ponzi scheme in *Merkin*. As the Court noted:

> Courts have held that to extend safe harbor protection in the context of a fraudulent securities scheme would be to "undermine, not protect or promote investor confidence . . . [by] endorsing a

---

[17] Section 546(e) of the Bankruptcy Code provides:

> [T]he trustee may not avoid a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, . . . except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

scheme to defraud SIPC," and therefore contradict the goals of the
provision.

*Merkin,* 440 B.R. at 267 (quoting *In re Adler, Coleman Clearing Corp.*, 247 B.R. at 105

(declining to grant safe harbor protection in fraudulent Ponzi scheme); *Kipperman v. Circle Trust*

*F.B.O.* (*In re Grafton Partners*), 321 B.R. 527, 539 (9th Cir. BAP 2005) ("The few decisions that

involve outright illegality or transparent manipulation reject § 546(e) protection.")); *see also*

*Johnson v. Neilson* (*In re Slatkin*), 525 F.3d 805, 809, 816-19 (9th Cir. 2008) (holding that §

546(e) safe-harbor defense does not apply where debtor operated a Ponzi scheme because he was

not "engaged in the business of effecting transactions in securities").  Indeed, no court to

consider the issue has extended the "safe harbor" provision of Section 546(e) to transfers related

to a Ponzi scheme.

Moreover, the purpose of Section 546(e) is to protect securities transactions without

destabilizing the public or private markets involving actual transactions that do or could impact

the markets generally.  *In re Grafton Partners*, 321 B.R. at 532-33; *see also Merkin*, 440 B.R. at

267-68.  Here, no relevant securities transactions took place, and therefore no statutory purpose

would be served.  *Merkin*, 440 B.R. at 267-68.  To the contrary, this result would authorize a

fraud and contravene the statute.  *Wider v. Wootton*, 907 F.2d 570, 573 (5th Cir. 1990) (refusing

to apply § 546(e) where doing so "would lend judicial support to 'Ponzi' schemes by rewarding

early investors at the expense of later victims") (quoting *In re Western World Funding, Inc.*, 54

B.R. 470, 481 (Bankr. D. Nev. 1985) (citing *In re Independent Clearing House Co.*, 41 B.R. 985

(Bankr. D. Utah 1984)).  In fact, the Second Circuit wrote – in its decision upholding this Court's

determination that the trustee properly disregarded fictitious securities transactions to calculate

customer claims – to do otherwise would allow "the whim of the defrauder [to control] the

process that is supposed to unwind the fraud".  *In re Bernard L. Madoff Inv. Secs. LLC,* __ F.3d

__ 2011, WL 3568936, at *5, *11 (2d Cir. 2011) (explaining that the Trustee need not "aggravate the injuries caused by Madoff's fraud" because it "would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations"). Similarly, applying section 546(e) would shield fraudulent transfers, which would "permit Madoff to arbitrarily decide who wins and who loses." *Id.* at *8.

Courts in this District have identified five factors relevant to a consideration of whether the safe harbor applies to a particular transaction. These include whether:

> (1) the transactions have long settled by means of actual transfers of consideration, so that subsequent reversal of the trade may result in disruption of the securities industry, creating a potential chain reaction that could threaten collapse of the affected market;
>
> (2) consideration was paid out in exchange for the securities or property interest as part of settlement of the transaction;
>
> (3) the transfer of cash or securities effected contemplates consummation of a securities transaction;
>
> (4) the transfers were made to financial intermediaries involved in the national clearance and settlement system; and
>
> (5) the transaction implicated participants in the system of intermediaries and guarantees which characterize the clearing and settlement process of public markets and therefore would create the potential for adverse impacts on the functioning of the securities market if any of those guarantees in the chain invoked.

*Alfa v. Enron Creditors Recovery Corp.* (*In re Enron Creditors Recovery Corp.*), 422 B.R. 423, 439 (S.D.N.Y. 2009), *aff'd*, __ F.3d __ 2011 WL 2536101 (2d Cir. 2011) (citations omitted). It is clear that none of these factors applies – evidencing the utter irrelevance of Section 546(e) to the transfers at issue here. In short, "it is relatively easy to conclude that Congress never could have meant to permit Section 546(e) to protect transactions that themselves were assaults on the securities markets, as that would be a perversion of the statute's purpose." *Geltzer v. Mooney (In*

*re MacMenamin's Grill Ltd.)*, No. 09–8266 (RDD), 2011 WL 1549056, at *9 (Bankr. S.D.N.Y.

Apr. 21, 2011) (Drain, J.) (citing *In re Adamo*, 619 F.2d 216, 222 (2d Cir. 1980) ("statute should

not be applied strictly in accord with its literal meaning where to do so would prevent its

manifest purpose.")).

Finally, SIPA incorporates the provisions of the Bankruptcy Code, but only to the extent

that the Code is consistent with SIPA.  *See* SIPA § 78fff(b).  SIPA would not permit an

interpretation of Section 546(e) that would apply to phantom securities transactions, where this

would result not only in shielding the fraudulent transfers made by Madoff, but also preferring

net winner customers to the exclusion and prejudice of the net loser customers—both of which

would be flatly contrary to SIPA's policy of equitable treatment among customers.[18]  *See*

*Madoff,* 2011, WL 3568936, at *10 (rejecting the premise that the trustee should give credit to

these fictional securities transactions because the purpose of the relevant SIPA provision is "fair

allocation" among customers); *Merkin*, 440 B.R. at 267 ("[I]n the context of a SIPA proceeding,

applying the safe harbor provision would eliminate most avoidance powers granted to a trustee

under SIPA, negating its remedial purpose").[19] As the Second Circuit has stated. "SIPA serves

---

[18] *See* REPORT OF SPECIAL STUDY OF SECURITIES MARKETS OF THE SECS. AND EXCH. COMM'N, H.R.
DOC. NO. 95, at 411-12; Analysis of H.R. 12889, 74th Cong., 2d Sess. 193 (1936) (statement of Harry
Zalkin) (purpose of authorizing trustee to avoid preferential and fraudulent transfers made to certain
customers at expense of others was to effectuate provision calling for ratable participation in single and
separate fund); *Hill v. Spencer Savings & Loan Association (In the Matter of Bevill),* 83 B.R. 880, 898
(D.N.J. 1988) (explaining SIPA's "purpose. . . to restore and maintain the confidence of investors in the
capital markets. . . is advanced by the equitable distribution of property. . . [a]doption of the new
categories of customer property. . . in the 1978 amendments to SIPA were intended to cure certain
inequities under the 1970 Act in the treatment of customers of the bankrupt broker").

[19] While Section 546(e) does not apply, it should be noted that it is an affirmative defense to claims
brought by a trustee, and the burden of proof rests on the defendant.  *Merkin*, 440 B.R. at 267; *see also
Degirolomo v. Track World, Inc. (In re Laurel Valley Oil Co.)*, No. 07-6109, 2009 WL 1758741, at *2-3
(Bankr. N.D. Ohio June 16, 2009).  Unless its application is clearly established on the face of the
Complaint, it "does not tend to controvert [the trustee's] prima facie case." *Merkin*, 440 B.R. at 267.
Even assuming the statute had any relevance, here, where there was only the illusion of securities activity,
Defendants cannot establish its application as a matter of law.

dual purposes: to protect investors and to protect the securities market as a whole." *See Madoff,*

2011 WL 3568936, at *10. To apply the safe-harbor in a situation where no securities were ever

purchased or sold would not only harm investors by allowing one customer to keep other

customer's money, but it would lend judicial support to frauds, undermining a fundamental

protection in the securities market.

> **B.      The Transfers Were Not Made For The Purposes Of "Completing" A
> Securities Transaction And Are Thus Not Settlement Payments Under
> Section 546(e).**

Defendants cannot satisfy their burden of demonstrating that any of the transfers made by

BLMIS to the Defendants were "settlement payments" within the meaning of Section 741(8) of

the Code.[20] The Second Circuit has found that a "'settlement' refers to 'the completion of a

securities transaction.'"[21] *Enron Creditors Recovery Corp. v. Alfa*, __ F.3d __, 2011 WL

2536101, at *7 (2d Cir. 2011) (quoting *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 985

(8th Cir. 2009) (quoting *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 849 (10th

Cir. 1990))). Here, the record is clear, BLMIS did not purchase securities and, therefore, there

were no securities transactions to settle.

Nor do the transfers to Defendants fall within the "catchall" definition of "settlement

payment," which includes "any other similar payment commonly used in the securities trade."

11 U.S.C. § 741(8). As a matter of law, the transfers at issue cannot be "commonly used in the

securities trade" because phantom trades of securities that never occurred are not commonly used

in the securities market. *See, e.g., Enron Corp. v. J.P. Morgan Secs., Inc. (In re Enron Corp.)*,

---

[20] Section 741(8) of the Code defines a settlement payment as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8) (2011).

[21] While the Second Circuit has held that "securities transactions" need not necessarily involve a purchase or sale of securities, such a transaction must be completed to fall within the meaning of "settlement payment." *Enron v. Alfa*, 2011 WL 2536101, at *7.

2008 WL 281972, at *5 (S.D.N.Y. Jan. 25, 2008) ("[T]ransactions [that] are not merely

unorthodox, but rather are *fundamentally tainted by misconduct or impropriety*, such as

manipulation, deception or illegality, a payment made to effectuate such transactions [have] been

found *not to be common in the securities trade, and hence not a settlement payment*.") (emphasis

added).

### C.    The Transfers At Issue Were Also Not Made In Connection With A "Securities Contract" Under Section 546(e)

Defendants rely on the language in Section 546(e) that the Trustee may not avoid "a

transfer made by or to . . . [a] stockbroker . . . in connection with a securities contract." 11

U.S.C. § 546(e) (2011). But the transfers here were not made in connection with a securities

contract. BLMIS did not purchase, loan or sell any relevant securities and its contracts were

fraudulent from inception. (SAC ¶¶ 25-33.) The computer system upon which BLMIS

purportedly conducted trades was not connected to any outside system; customer statements

were entirely fabricated; and the only funds transferred to customers like the Defendants

consisted of other people's money. *Id.*; *In re Bernard L. Madoff Inv. Secs., LLC,* 424 B.R. 122,

127-28 (Bankr. S.D.N.Y. 2010). Simply put, the transfers here were made in connection with

furthering the Ponzi scheme, not in connection with any securities contract. *See Merkin*, 440

B.R. at 267; *See also In re Bernard L. Madoff Inv. Secs. LLC,* 2011 WL 3568936, at *11 (2d Cir.

2011) ("It would have been legal error" for the trustee to give legal effect to fictitious securities

transaction) (citing *In re Bernard L. Madoff Inv. Secs., LLC,* 424 B.R. 122, 135 (Bankr. S.D.N.Y.

2010)).

## V.    TSF'S SIPA CLAIMS SHOULD BE TEMPORARILY DISALLOWED UNDER SECTION 502(D)

Count Eight of the Amended Complaint sets forth a claim to disallow TSF's SIPA claims

under section 502(d) of the Bankruptcy Code. The Defendants do not dispute that the Trustee

has sufficiently pled a claim for disallowance of TSF's SIPA claims under the Bankruptcy Code.

Rather, they contend that the Trustee's 502(d) claim should be addressed separately in

accordance with this Court's Order of December 23, 2008 concerning procedures for filing,

determination, and adjudication of claims.  (MTD at 37-38.)  This is the sole basis upon which

the Defendants contend that Count Eight of the Amended Complaint should be dismissed.  *Id.*

Nothing in this Court's December 23, 2008 Order, however, precludes the Trustee from

addressing TSF's SIPA claims in this action.  Indeed, it is in the interest of judicial economy to

address all of the Trustee's claims against the Defendants, including disallowance of TSF's SIPC

claims, in a single proceeding.  Section 502(d) of the Bankruptcy Code states, in relevant part,

that "the court shall disallow *any* claim of any entity from which property is recoverable under

section . . . 550 . . . or that is a transferee of a transfer avoidable under section . . . 544, . . . 547

[and] 548 of [the Bankruptcy Code]."  11 U.S.C. § 502(d) (2011) (emphasis added).

As explained in detail above, the Defendants received fraudulent and preferential

transfers.  Because of this, TSF's customer claims are subject to disallowance under section

502(d) of the Bankruptcy Code until all the avoidable transfers are returned to the estate.  The

Trustee's section 502(d) claim, Count Eight of the Amended Complaint, is sufficiently pled and

should be sustained.  *Cohmad*, 2011 WL 3274077, *18; *Merkin*, 440 B.R. at 271 ("Trustee has

sufficiently alleged . . . that the Fund Defendants are 'transferee[s] of a transfer avoidable under

section ... 544 ... 547, [or] 548' of the Code, an express ground for disallowance under section

502(d) of the Code.").

## VI.    TAM'S CHALLENGE TO PERSONAL JURISDICTION IS FRIVOLOUS

### A.    Legal Standard

The Trustee has met his burden of making a *prima facie* showing that personal

jurisdiction exists over Defendant TAM and Defendant TAM has not demonstrated that the

Court's exercise of jurisdiction under the circumstances would be unreasonable. Accordingly, Defendants' motion to dismiss this action with respect to Defendant TAM for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Bankr. P. 7004(f) and 7102(b) must be denied.

To withstand Defendants' motion to dismiss for lack of personal jurisdiction, the Trustee "need only make a *prima facie* showing . . . that personal jurisdiction exists." *Chais,* 440 B.R. at 278 (citations omitted). A *prima facie* showing requires the Trustee to "make legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Chais,* 440 B.R. at 278 (quoting *Penguin Group (USA) Inc. v. Am Buddha,* 609 F.3d 30, 35 (2d Cir. 2010)). *See also, Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (internal citation omitted).

Upon making a *prima facie* showing that jurisdiction exists, unless Defendant TAM can demonstrate "a compelling case that jurisdiction would be unreasonable under the circumstances," the motion must be denied. *See Chais,* 440 B.R. at 280; *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 81 (Bankr. S.D.N.Y. 2009); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. N.Y. 2002) ("Where a plaintiff makes a threshold showing of minimum contacts required by the first test, a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (quoting *Metropolitan Life Ins. Co.,* 84 F.3d at 568).

**B.**      **The Applicable Personal Jurisdictional Analysis**

The personal jurisdictional analysis is a Due Process analysis which requires the Court to assess whether: (1) "the defendant has certain minimum contacts [with the forum] … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" and (2) "whether it is reasonable under the circumstances of the particular case" to assert

personal jurisdiction. *Bank Brussels Lambert,* 305 F.3d at 127-29 (internal quotations omitted).

The Court may establish specific jurisdiction over Defendants if this action "arises out of" Defendants' contacts with the forum, and where Defendants purposefully availed themselves of the privilege of conducting activities within the forum thereby invoking the benefits and protections of its laws. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n.. 8 (1984). New York courts have held that a claim "arises from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted." *Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006) (quotations omitted); *see also Agency Rent A Car Sys., Inc. v. Grand Rent a Car Corp.,* 98 F.3d 25, 31 (2d Cir. 1996).

### C. Trustee's Jurisdictional Allegations Establish TAM's Sufficient Minimum Contacts In The United States

The Trustee has made a *prima facie* showing that Defendant TAM purposefully directed their activities at the forum and that this action arises out of or is related to those activities, allowing the Court to exercise specific jurisdiction over Defendant TAM.

As alleged in the Complaint, TAM specifically sought out the United States, and New York in particular, when it chose to open an account with BLMIS. (SAC ¶ 24.) Further, the Transfers at issue in this action arose out of business transactions tied to TAM's account with BLMIS in New York, New York. (*Id.* at Exhibit B.) Under New York's Long Arm Statute, CPLR 302(a)(1), the maintenance of a securities account in New York is sufficient basis for finding personal jurisdiction for claims arising out of that "transaction of business" – which are the types of claims asserted here. *Rothschild v. Thompson*, 78 A.D.2d 795 (1st Dep't 1980); *Credit Lyonais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153-154 (2d Cir. 1999). Moreover,

TAM purposefully availed itself of the benefits of the transactions arising out of the TAM Account by directing that funds be invested in BLMIS in New York and by receiving monies from the over $22 million in Transfers from BLMIS. (SAC, Exhibit B).

In an earlier case decided by this Court, the Court found that personal jurisdiction was established when a Complaint included allegations stemming from the avoidance of fraudulent transfers arising out of defendants' BLMIS account transactions. Defendants opened their BLMIS account by executing a Customer Agreement deemed to be made in New York and subject to New York law, directed transfers and withdrawals from their BLMIS account, and one of the defendants designated a United States agent to act on its behalf in directing financial transactions for the BLMIS account. *In re Bernard L. Madoff Inv. Sec. LLC*, 418 B.R. at 80-81. In reaching this conclusion, the Court found that the foreign defendants' conduct established sufficient minimum contacts in the United States to support a finding of personal jurisdiction. *Id*.; *see also In re Deak & Co., Inc.*, 63 B.R. 422, 428 (Bankr. S.D.N.Y. 1986) (finding that an international defendant must have minimum contacts in the forum state to establish personal jurisdiction).

In this case, TAM conducted itself in the same way as the defendants in *Cohmad*. TAM opened an account with BLMIS for the purpose of engaging in securities investments in New York. (SAC ¶ 22.) TAM, thereafter, invested over $72 million in its account with BLMIS in New York, and redeemed from that same account over $22 million. (*Id.* at Exhibit B.) Further, TAM designated BLMIS as its agent to act on its behalf in executing securities and option transactions. (SAC ¶ 22.) For the same reasons that this Court found that the allegations in the *Cohmad* complaint established personal jurisdiction over foreign defendants, the undisputed factual allegations of the Amended Complaint also demonstrate that TAM has had sufficient

minimum contacts with the United States to establish personal jurisdiction over TAM.

Defendant TAM has not presented any arguments, let alone a compelling case, that the Court's exercise of personal jurisdiction over it would be unreasonable under the circumstances. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at the forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). This Court has previously found that with respect to those who had business dealings related to BLMIS it "certainly has jurisdiction to determine whether such transactions contributed to the massive losses suffered by victims of the BLMIS Ponzi scheme in the United States." *Chais,* 440 B.R. at 281-82 (internal citation omitted).

## CONCLUSION

For the reasons discussed above, the Trustee respectfully requests that the Defendants' motion be denied in its entirety and that discovery be ordered to immediately proceed.

Dated: New York, New York
            August 24, 2011                       */s/ Elizabeth A. Scully*
                                                  Baker & Hostetler LLP
                                                  45 Rockefeller Plaza
                                                  New York, New York 10111
                                                  Telephone: (212) 589-4200
                                                  Facsimile: (212) 589-4201
                                                  David J. Sheehan
                                                  Email: dsheehan@bakerlaw.com
                                                  Regina L. Griffin
                                                  Email: rgriffin@bakerlaw.com
                                                  Mark A. Kornfeld
                                                  Email: mkornfeld@bakerlaw.com
                                                  Jorian L. Rose
                                                  Email: jrose@bakerlaw.com

                                                          – and –

Baker & Hostetler LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
Elizabeth A. Scully (*pro hac*)
Email:  escully@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*